LEONARD BAUS AND JAMES MEANEY, RESPONDENTS, v. TRENTON AND MERCER COUNTY TRACTION COMPANY, APPELLANT.

Argued May 28, 1924—Decided October 20, 1924.

1. A question bearing directly upon the injuries proximately resulting from an accident and consequently upon the amount of damages, is competent and relevant.

2. When an expert medical witness had testified as to the condition and symptoms of the injured person whom he had examined, some of which symptoms usually accompanied a certain disease, it was error to exclude a question asked such expert, on cross-examination, what marked and familiar symptom of that particular disease did not exist in the injured person.

3. A question asked an expert witness, on cross-examination, what symptom of a certain disease did not exist in the injured person, other than those the witness had testified he had observed, should

have been allowed to have been answered, for, assuming that the witness would have replied that there were no other symptoms, the defendant was entitled to the benefit of such answer, as it would have tended to show that the injured person was suffering from the disease which was not the result of the injuries he received.

On appeal from the Supreme Court.

For the appellant, *Katzenbach & Hunt.*

For the respondents, *Martin P. Devlin.*

The opinion of the court was delivered by

CAMPBELL, J. The respondents have judgments upon verdicts obtained in the Mercer County Court of Common Pleas against appellant; Meaney for damage to a motor truck for $255 and Baus for personal injuries for $15,000. The actions were based upon the alleged negligence of the servants of appellant in operating a trolley car in the city of Trenton resulting in a collision between such car and the motor vehicle operated and occupied by respondents.

Upon appeal to the Supreme Court the judgments of the Common Pleas Court were affirmed, and from such judgment of affirmance the present appeals are taken.

The one ground of appeal urged in the Meaney case is that the trial court denied appellant's motion for a nonsuit, whereas it should have granted the motion, because there was no evidence of negligence on the part of appellant, and the negligence or contributory negligence of the plaintiff-respondent clearly appeared.

We are satisfied, as was the Supreme Court, that the trial court was clearly right in denying this motion. There was testimony from which negligence of appellant could be found, and the question of contributory neglience in this case was one that also should have been submitted to the jury, as was done.

There being no error, the judgment below is affirmed.

In the Baus case there are three grounds of appeal urged and argued here.

The one is the refusal to nonsuit as urged in the Meaney case, and which has already been disposed of herein. That disposition was that there was no error in refusing to nonsuit, and that is also our conclusion in the Baus case.

The next ground of appeal is that Dr. Martin W. Reddan, a physician, called for the plaintiff Baus, was asked and permitted to answer over objection the following question with reference to the plaintiff Baus, after Baus, himself, had testified fully on the entire subject-matter of his suit:

"*Q.* Assuming this man's memory were good before the accident, and normal, would you say he was able to recount with a fair degree of accuracy the things which happened at this accident?"

The complaint directed to the admission of this question is that it was an attempt to impeach plaintiff's own witness, but that is not so. See *Fox* v. *Forty-four Cigar Co.*, 90 *N. J. L.* 483, defining impeachment.

The plaintiff had testified as to his faulty memory since the accident, and so had his wife, and this question simply solicited corroboration thereof.

There was no error in permitting an answer to this question.

The final ground is that the court should not have overruled the question put to Dr. Martin W. Reddan on cross-examination, namely—"Now, doctor, what marked and familiar symptom of paralysis agitans is there which does not exist in Mr. Baus' case?"

Dr. Reddan was the physician and surgeon who had attended, treated and operated upon Baus from the time of the accident, and was still attending and treating him at the time of trial, although he had never treated or known him prior to the accident. Baus and his wife and James Meaney had testified to the good health and physical condition of Baus prior to the accident.

At the time of the trial Baus had a trembling of the head and right hand and an impairment of his memory. Dr. Reddan had testified upon his direct examination that these conditions and infirmities were due "to the upset of the nervous system by the accident."

The direct injuries to Baus from the accident were a compound fracture of the leg, which, ultimately, required the amputation of the leg below the knee, and some injuries or cuts upon the head which were not serious. The doctor also testified that he had not examined Baus to ascertain whether or not he had any other disease.

On cross-examination the witness was asked to state what percentage of cases, in his experience, of compound fracture of the leg, resulted, in so late a date after the happening and treatment therefor, in such a tremor of the hand as was observable in Baus, and he answered he could not recall any.

The witness was further asked: "*Q.* This man testified that he is fifty-two years of age; isn't it true that there are thousands of people fifty-two years of age who are suffering with this tremor that he suffers from who have never had a compound fracture of the leg or any other similar injury?" and the answer was, "I don't know how many at that age are suffering from it. If you mean paralysis agitans, which is the technical term for this trembling, in my experience, it has usually occurred in older people." He then testified that it may occur in persons as young as thirty, and that, in his judgment, Baus was not suffering from paralysis agitans; that the tremor was a well-recognized sympton of such ailment; the moving of the head another, and that slow and indistinct speech was another, although not prominent symptom, and that such loss of voice was progressive, growing worse as the disease advanced. Thereafter, again the witness asserted positively that Baus was not suffering with paralysis agitans. Also, that that malady was a progressive disease.

It was then that the question under consideration was asked and objected to upon the ground that there was no evidence of the disease of paralysis agitans, and the objection sustained.

We think the question was competent and relevant, and that the overruling thereof was injurious error affecting the substantial rights of the appellant. It must be kept in mind that this witness had testified that this tremor of the hand

and head, faulty memory and the hesitating speech, were all the result of the accident and the injuries received therefrom; had also admitted that they were, at least, some of the symptoms to be found in paralysis agitans, and that that disease was progressive; that he had not known or treated Baus prior to the accident. Baus' good condition of health prior to the accident had also been testified to.

In *Prout* v. *Bernards Land and Sand Co., 77 N. J. L.* 719, we said: "Cross-examination on matters, either directly in issue or indirectly relevant to the issue, is a matter of right, and its exclusion is error." And, again, in the same case: "Although the court may exercise a reasonable discretion in regulating or limiting the cross-examination, yet it is clearly error to exclude cross-examination on subjects included in the examination in chief, where such ruling is prejudicial. So far as such cross-examination of a witness relates either to facts in issue or facts relevant to the issue, it may be pursued by counsel as a matter of right." Now, this question went to a subject included in the examination in chief, namely, the cause of the tremor of hand and head and the affected speech, and whether they were attributable to the accident or the result of a pre-existing disease, perhaps, paraylsis agitans.

Likewise, it was relevant and competent to the issue, because it bore directly upon the injuries proximately resulting from the accident, and, consequently, upon the amount of damages. It is urged that this rule applies only to witnesses who are parties to the action and not others. It may be conceded that this is so as to matters not the subject or within the scope of the direct examination, but certainly not where the proposed cross-examination is as to subjects within the scope of the examination in chief. *Fahr* v. *New York, Susquehanna and Western Railroad, 72 Atl. Rep.* 69. It is also urged that the rule in *Prout* v. *Bernards Land and Sand Co., supra,* is not applicable in the face of section 27 of the Practice act (*Pamph. L.* 1912, *p.* 382), "unless, after an examination of the whole case, it shall appear that the error injuriously affected the substantial rights of a party." But

it has since been so applied. *Davenport* v. *Patteson,* 98 *N. J. L.* 65. Furthermore, an examination of the whole case leads us to the conclusion that the exclusion of this question did injuriously affect the substantial rights of the defendant, as we have already endeavored to point out. It is proper to assume that, if the question had been allowed, the answer would have been that there were no other symptoms. The appellant was entitled to the benefit and advantage of such an answer had it been given, lessening, or, perhaps, totally, destroying the value of the witness' previous testimony that the tremor of hand and head and faltering speech were the proximate result of injuries sustained in the accident. That he might have made the witness his own witness. or called another who would have so answered, does not lessen the substantial injury which we find he suffered by the ruling in question.

There being error, in the ruling complained of, injuriously affecting the substantial rights of the appellant, the judgment below in favor of the appellant Leonard Baus is reversed and a *venire de novo* awarded.

KALISCH, J. (dissenting). The prevailing opinion appears to me to subvert a well-settled legal rule of evidence in holding that a question put to a witness on cross-examination, so long as the question relates to an issue in the cause, though no foundation was laid for asking the question on direct examination, is a matter of right.

The case of *Prout* v. *Bernards Land and Sand Co., 77 N. J. L.* 719, decided by this court, is relied on as sustaining this view. A fair reading of the case, however, discloses that this court decided that where a party in interest is a witness (one of the plaintiffs in that case) he may be cross-examined, as a matter of right, on all the issues in the case, even though there was no basis laid for the same on direct examination.

The cases cited in the opinion in support of this declaration were all cases which dealt with the examination of a party in interest, either as plaintiff or defendant, except the case of *Langley* v. *Wadsworth,* 99 *N. Y.* 61, which de-

cided: "When cross-examination is only to test the accuracy or credibility of the witness, its method and duration are subject to the discretion of the court, and, unless the exercise of this discretion is abused, is not the subject of review."

The syllabus of the Prout case is broader than was warranted by the precise question which was presented and decided by this court.

There is a marked and substantial difference in the application of the rule of evidence invoked between a cross-examination of a party in interest and a witness produced on behalf of such party. In the former case the plaintiff or defendant, as the case may be, can be properly cross-examined on any or all the issues, irrespective of the fact whether or not he had been examined in chief in relation thereto. In the latter case a witness called on behalf of either cannot. The distinction between the two situations is a well-recognized one, founded in good sense, and has received the sanction of the text-writers on evidence, of skilled and eminent judges and of able and skilled trial lawyers.

It must be borne in mind that the distinction to be drawn between the two variant instances, regarding the application of the rule, as above marked out, was not the product of a day or a year, but was of slow growth, evolved from long experience, in the trial of causes, of learned and eminent judges, wherever the English common law was in force.

To adopt the rule as laid down in the prevailing opinion is to strike a blow at the orderly administration of the trial of causes between litigants.

Both bench and bar are familiar with the circumstance, that frequently it becomes necessary to call a witness for the adverse party to establish some fact essential to the plaintiff's or the defendant's case. According to the broad rule of the prevailing opinion, if a plaintiff calls a witness for the adverse party and asks him questions limited to proving some essential fact necessary for the plaintiff to establish, the defendant may cross-examine such witness on any of the other issues of the case. Now, it is quite manifest what such a course of procedure would lead to. The principal evil that

suggests itself is, that the defendant would thereby be permitted to put in his defense on the plaintiff's case, confuse the issues being tried, and thus materially and prejudicially interfere with the proper presentation of the plaintiff's case. This alone is sufficient to condemn a rule of evidence which will work such a chaotic condition and injustice. The case of *Davenport* v. *Patteson, 98 N. J. L. 65*, referred to in the majority opinion as supporting its view, was a case in which the plaintiff was being cross-examined. The other case of *Fahr* v. *New York, Susquehanna and Western Railroad Co., 72 Atl. Rep.* 69, also relied on for the same purpose, shows, from a plain reading of it, that the direct examination of the witness laid a foundation for the questions put on the cross-examination, and which were manifestly improperly overruled by the court.

But in the case *sub judice* neither of these conditions was present. The question put to the medical witness whether the plaintiff had paralysis agitans was elicited on cross-examination by defendant's counsel, for which no foundation was laid in the examination in chief, and the witness having answered that the plaintiff did not have that disease, counsel for defendant undertook to further cross-examine the witness to elicit the grounds of his belief.

According to the record this is what occurred: Objection by plaintiff's counsel was interposed to the question upon the ground that the plaintiff had not introduced any evidence of any such disease. Counsel for defendant insisted upon his right to ask the question, and plaintiff's counsel apparently consented that he might, in these words: "If he makes him his own witness." This, manifestly, defendant's counsel declined to do, so the trial judge overruled the question, to which ruling an exception was taken.

Now, it seems to me that the effect of this ruling was not a denial of the right to seek the information from the witness suggested by the question, for, on the contrary, the right was conceded, but the legal propriety of injecting this new matter on cross-examination was denied, unless the defendant chose to make the witness his own. It is therefore difficult to com-

prehend upon what sound theory it can be properly said that the defendant was denied a legal right to obtain the information which he sought. For, even if defendant's counsel had consented to make the witness his own, and had asked the medical expert, as he did, what marked and familiar symptom of paralysis agitans was there which did not exist in the plaintiff's case, and the doctor had answered there was none or that there was one, neither answer would have precluded the defendant from introducing, on the defense, medical testimony that the symptoms given by the medical expert on part of the plaintiff indicate the disease of paralysis agitans.

It is a familiar rule of evidence that the order of proof is within the control of the court and rests largely in its sound discretion and is not subject to review, unless it clearly appears that there was an abuse of such discretion prejudicial to the litigant.

But assuming that the question was improperly overruled, I concur with the view expressed in the opinion of the Supreme Court that the exclusion of the proposed inquiry was harmless. There is no rule more firmly settled in this state than the rule that a judgment will not be reversed unless the error complained of clearly tended to prejudice the party complaining on the merits of the case. The reason suggested by the learned author of the majority opinion why the exclusion of the question was harmful, is that, if the witness had been permitted to answer the challenged question, it is proper to assume that the answer would have been that there were no other symptoms, and thus tend to lessen, or, perhaps, totally destroy the value of the witness' testimony that the tremor of hand and head, &c., was due to the accident.

There is no warrant for any such assumption. The inference is purely of a conjectural and speculative nature. A fair reading of the doctor's testimony demonstrates that the cross-examiner sought from him a medical name of the disease which the symptoms given by him indicated. How that would have helped to accomplish the purpose suggested is incomprehensible to me. If the witness had answered that

the symptoms pointed to paralysis agitans, in what respect that would have been helpful or enlightening to the jury, on the question of the measure of damages, is not apparent. For, if the nervous condition of the plaintiff was in a low state at the time he received his injury, as was testified to by the doctor, it would seem to me, by whatever name the nervous trouble was designated, that if the answer, attempted to be elicited by the overruled question, was answered as conjectured, it would have been, in the prevailing opinion, it would have tended to enhance the damages rather than to diminish them.

Moreover, it is a significant fact which ought not to be overlooked, that on the defense no medical expert was called to testify, what disease the symptoms brought out by defendant's counsel on cross-examination indicated, or to contradict any of the statements made by the plaintiff's medical witness.

For the reasons given I vote to affirm the judgment, with costs.

In Baus' appeal—

*For affirmance*—THE CHANCELLOR, TRENCHARD, KALISCH, LLOYD, CLARK, JJ. 5.

*For reversal*—PARKER, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, JJ. 7.

In Meaney's appeal—

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, LLOYD, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS, JJ. 12.

*For reversal*—None.