IRVING ROSENBERG, Respondent, *v.* MAX BEKENSTEIN and Another, Defendants, Impleaded with KATZ GARMENT Co., INC., Appellant.

First Department, February 20, 1925.

**Bills and notes — action by indorsee against maker and prior indorser — prior indorser, domestic business corporation, interposed defense that it was accommodation indorser — prior indorser not liable if character of indorsement was known to plaintiff at time he discounted note — court properly submitted question of character of indorsement and of knowledge to jury and its verdict against plaintiff is not against evidence.**

In an action by an indorsee of a promissory note against the maker and prior indorser, it is a good defense on behalf of the prior indorser that it is a domestic business corporation and indorsed the note for the accommodation of the maker if it is shown that the character of the indorsement was known to the plaintiff at the time he discounted the note.

The court properly submitted the questions to the jury whether or not the indorsement was an accommodation indorsement and whether or not the plain-

tiff took the note with notice or knowledge thereof, and the verdict of the jury against the plaintiff on said questions was not against the weight of the evidence.

APPEAL by the defendant, Katz Garment Co., Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the Appellate Term on the 25th day of June, 1923, reversing a judgment of the City Court of the City of New York in favor of the appellant.

*Cohen, Haas & Schimmel* [*Isidore Cohen* of counsel], for the appellant.

*Milton Breakstone* [*Gerson C. Young* of counsel], for the respondent.

MERRELL, J.:

The action is upon a promissory note indorsed by the defendant, appellant, the Katz Garment Co., Inc. Upon the trial an issue of fact was presented by the testimony as to whether or not the indorsement of the promissory note in suit, which was made by one Max Bekenstein, payable to his order and first indorsed by him and subsequently indorsed by the Katz Garment Co., Inc., was indorsed by the said defendant, appellant, without consideration and for the accommodation of said Bekenstein, or whether the indorsement of the defendant, appellant, was for value. Upon the trial the plaintiff presented the note, the making and delivery of which was admitted by the defendant, and rested. The defense then offered testimony to show that its indorsement of the note in question was without consideration and solely for the accommodation and benefit of Bekenstein.

The Katz Garment Co., Inc., was a manufacturing corporation organized under the laws of this State. Bekenstein conducted a restaurant business in Hoboken, and Morris Katz, the president of the Katz Garment Co., Inc., had been his warm friend for many years and had frequently done favors for Bekenstein, lending him money and indorsing his paper. Katz testified that Bekenstein, at the time of the indorsement of the note in question, owed his corporation or himself nothing, nor was the corporation indebted to Bekenstein; that no sale of merchandise or other business transaction of any kind was had between Bekenstein and the Katz Garment Co., Inc., or Katz personally, except the indorsement of the note in suit at Bekenstein's request. The note bore date May 24, 1922, and was given for $1,000, and as before stated was payable three months after date to the order of the maker, Max Bekenstein. Bekenstein brought the note which he had thus made and indorsed to Katz and asked that the Katz Garment Co., Inc., indorse the same so that he could obtain the money thereon. This the presi-

dent, Morris Katz, did, indorsing first the name of his corporation and its address, by himself, as president. Morris Katz further testified that a few days thereafter Bekenstein brought to the defendant the plaintiff's check for the sum of $1,000, which was made payable to the order of the Katz Garment Co., Inc., and asked Katz to indorse the same, which he did by indorsing on said check the name of his corporation, and returned the same to Bekenstein. Bekenstein also obtained the indorsement of B. Levine, the treasurer of the Katz Garment Co., Inc. Both Katz and Levine testified that no part of the proceeds of this check was ever received by the corporation or Katz or Levine, and that no money was received by the corporation from Bekenstein at any time at or after the date of said check. Almost immediately after the check was indorsed by Katz and Levine and delivered to Bekenstein, the latter disappeared and according to the evidence had not been heard of from that time until the time of the trial. The check of the plaintiff with its various indorsements was offered and received in evidence. The check bears the indorsement, first, of the payee, Katz Garment Co., Inc., M. Katz, president, B. Levine, treasurer, and underneath this indorsement is that of M. Bekenstein and of the Trust Company of New Jersey, Hoboken Branch. It, therefore, very plainly appears that Bekenstein obtained the proceeds of said check. Upon the trial the books of the corporation were produced and show that the transaction in connection with the note had nothing to do with the business of the corporation.

The plaintiff is an attorney and counselor at law, practicing in the borough of Manhattan, New York city. He testified that on June 7, 1922, a Mr. Aronson, a real estate agent and an office associate of Rosenberg, the plaintiff, came into his private office with Max Bekenstein, and that Aronson handed Rosenberg the note in suit. At that time all prior indorsements were on the note; that Aronson asked Rosenberg to discount the note and Rosenberg testifies that merely out of friendship for Aronson he discounted the note by then drawing his check for $1,000, payable to the order of the Katz Garment Co., Inc., and then delivered said check to either Aronson or Bekenstein. Later on in his testimony plaintiff testified that he delivered the check to Bekenstein. At that time Rosenberg disclaims any knowledge or acquaintance with the Katz Garment Co., Inc., or any one connected with said corporation. Plaintiff did not disclaim knowledge or lack thereof as to the accommodation nature of the defendant's indorsement of the note.

Aronson testified that he received the note from a man by the name of I. Roey, who he testified was a partner with Bekenstein

in the restaurant enterprise at Hoboken; that Roey had brought the note to him a day or two before and asked him as a favor to have it discounted, agreeing to pay him for his trouble. Aronson testified that he went to the Katz Garment Co., Inc., to see Katz, and there saw a son of Bekenstein, who was employed there as a bookkeeper, and that the son then told him, when shown the note, that it was all right, and that Bekenstein, the maker of the note, was his father and owed money to the Katz Garment Co., Inc., and that he paid them by that note. Aronson further testified on the day following he again visited the Katz Garment Co., Inc., and saw Morris Katz, its president, and that Katz then stated to him that he knew Bekenstein and that Bekenstein owed the firm money, and that it was hard to get money from him, and that he thought the best thing to do would be to get a note from him and get the note discounted. Aronson further testified that on the day following, June 7, 1922, he saw Bekenstein in the plaintiff's office, and at that time Bekenstein received the plaintiff's check for $1,000. On cross-examination he admitted that Bekenstein gave his personal check for $25 to him to make good Roey's agreement to pay him for his trouble.

Jacob Bekenstein, a son of the maker of the note, denied that he ever had any such conversation with Aronson as testified to by the latter. He testified that Aronson did come to the place of business of the Katz Garment Co., Inc., but that the only inquiry he made was as to the genuineness of the indorsement of the Katz Garment Co., Inc., upon the note in suit.

Morris Katz, in rebuttal, also denied that he had any conversation with Aronson, except on one occasion, when the note was protested, and that he on that occasion asked Aronson what he wanted of him, and advised Aronson to wait until Bekenstein came back, and that he would then pay him.

The evidence, as before stated, presented two questions of fact: *First*, was the note an accommodation note indorsed by the Katz Garment Co., Inc., for the accommodation of Bekenstein; and, if so, was the plaintiff an innocent purchaser and holder thereof for value without notice of any infirmity? Under the decisions in this State the law is well settled that the defendant Katz Garment Co., Inc., being a domestic manufacturing corporation, was without authority to sign or indorse accommodation paper. (*Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *National Park Bank* v. *German-American Mutual Warehousing, etc., Co.*, 116 id. 281; *National Bank of Newport* v. *Snyder Mfg. Co.*, 117 App. Div. 370; *Fox* v. *Rural Home Co.*, 90 Hun, 365; affd., on opinion below, 157 N. Y. 684.) Even though the indorsement was made by the

defendant, appellant, for the accommodation of Bekenstein, the indorser would nevertheless be liable unless the plaintiff had knowledge or notice that the defendant was an accommodation indorser. As to whether the plaintiff had notice that the note was indorsed for the accommodation of Bekenstein was a question for the determination of the jury under the evidence. The trial court, I think, very properly held that there were circumstances in connection with the making of the note in suit and its discounting by the plaintiff from which the jury could say that the plaintiff had knowledge that the note was given for the accommodation of the maker. In the first place, the note was made by Bekenstein, payable to his own order, and was then indorsed by the Katz Garment Co., Inc., and delivered back and in the possession of Bekenstein. Bekenstein carried it to the plaintiff and the latter in discounting the note did not make a check payable to Bekenstein, but made his check payable to the Katz Garment Co., Inc., and delivered such check to Bekenstein himself. The circumstances aforesaid were certainly sufficient to throw suspicion upon the whole transaction and to give rise to the belief that the plaintiff knew that the proceeds of the note were not to go to the Katz Garment Co., Inc., but were to go to Bekenstein himself. (*National Park Bank* v. *German-American Mutual Warehousing, etc., Co.*, 116 N. Y. 281; *Smith* v. *Weston*, 159 id. 194.) In *Smith* v. *Weston* (*supra*, at p. 199), Judge VANN, writing for a unanimous Court of Appeals, said: " As the note was transferred to the plaintiff by one of the makers, who was also the payee and first indorser, the presumption arose that the second indorsement was made for the accommodation of some prior party to the note and threw the burden on the holder of showing that it was authorized. (*National Park Bank* v. *German-American, etc., Co.*, 116 N. Y. 281.) * * * He was, therefore, put upon inquiry, which, if made in the proper quarters, would, as it must be presumed, have disclosed the fact that the second indorsement was made without authority. (*Foot* v. *Sabin*, 19 Johns. 154; *Wilson* v. *Metropolitan Elevated Ry. Co.*, 120 N. Y. 145; *Stall* v. *Catskill Bank*, 18 Wend. 466; *Gansevoort* v. *Williams*, 14 Wend. 134; *Joyce* v. *Williams*, Id. 141; *Wilson* v. *Williams*, Id. 146.)"

The court submitted that question to the jury in a very fair and comprehensive charge, and the jury found upon both propositions in favor of the defendant.

I think the Appellate Term erroneously reversed the judgment of the City Court, and improperly granted judgment in plaintiff's favor upon the note. The determination of the Appellate Term should, therefore, be reversed, and the verdict of the jury in the

City Court reinstated, and the judgment entered thereon be affirmed, with costs to the appellant in this court and in the Appellate Term.

CLARKE, P. J., FINCH, MCAVOY and MARTIN, JJ., concur.

Determination of Appellate Term reversed, the verdict of the jury in the City Court reinstated and the judgment entered thereon affirmed, with costs to the appellant in this court and in the Appellate Term.